FILED
04 MAY -4 PM 3:01
U.S. DISTRICT COURT
N.D. OF ALABAMA
ENTERED
MAY 0 4 2004

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

FRANKLIN LITTLEJOHN,

Plaintiff,

v.

THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ALABAMA,

Defendant.

CIVIL ACTION NO. 99-PWG-2984-M

MEMORANDUM OF OPINION

Franklin Littlejohn, plaintiff herein, filed this Title VII action against the Board of Trustees of the University of Alabama (herein "UAB). Littlejohn alleges that he applied for and was denied promotions for positions as Construction Coordinator in 1998 and 1999 based on race and further in retaliation for engaging in a protected activity. The parties have consented to the jurisdiction of the magistrate judge pursuant to 28 U.S.C. § 636(c) and LR 73.2.[1]

This matter is before the court on defendant's motion for summary judgment (doc. #11). Summary judgment is appropriate only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Rule 56, *Federal Rules of Civil Procedure*. In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden of proof is upon the moving party to establish his *prima facie*

[1] Ruling on the motion for summary judgment was withheld first upon the motion of plaintiff's counsel and later because plaintiff's attorney, Marvin Stewart, was suspended from practice in this court. The motion for summary judgment was submitted by plaintiff in November 2000. After Mr. Stewart was suspended the court made an inquiry concerning cause in cases that had been filed by Mr. Stewart or his law firm. In December 2003 the court directed the plaintiff to notify the court of new counsel and to request assistance if necessary in obtaining any data or information from the administrator of Stewart's practice. That order stated that in the absence of a showing of good cause the summary judgment motion would be resolved after December 19, 2003 without further notice. No response to the order has been received nor has new counsel appeared.

30

entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a *prima facie* case. "In such a situation, there can be `no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [Citation omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

898 F.2d at 1532.

The following material facts are undisputed. Mr. Littlejohn was first employed by UAB in May, 1984. In 1998, Littlejohn applied for a position as Construction Coordinator. After two construction coordinators, Dennis Sego and James Crosby, left UAB, the job description of the construction coordinator was rewritten to require a four year degree in building science or construction science, engineering or architecture. Neither Sego nor Crosby had had a four year

degree. Littlejohn did not have a four year degree in the specified fields nor in any other area. In 1998, three construction coordinator positions became open. The positions were awarded to Alesia Harris, a black female with a master's degree in Engineering; Sid Lowman, a white male with a bachelor's degree in building science; and John Cook, a white male with a bachelor's degree in accounting. Even though Cook's degree was not in an area specified by the job description, David Struck, Director of Project Management Services, determined that he was the most qualified and that his accounting degree would be directly related to many of the significant duties of a construction coordinator. After these three applicants were hired the job description was expressly revised to allow for degrees in related fields. Littlejohn applied for another construction coordinator vacancy in the Spring of 1999. At that time, however, he still did not hold a bachelor's degree. Susan Zumbado, a white female with a degree in building science, was chosen to fill the construction coordinator vacancy in the Spring of 1999. Plaintiff filed a charge with the EEOC on December 22, 1998, alleging that he had been denied a promotion in July of 1998 to the position of Campus Maintenance Supervisor, and again in August of 1998 to the position of Construction Coordinator. In December of 1998, Littlejohn again applied for and received the promotion to the campus maintenance supervisor position. He holds that position today. The promotion and attendant raise of $4,500 per year became effective March 1, 1999.

On November 9, 1990, Judge U.W. Clemon entered a consent decree in the case of *Perry Woods, et al. v. Board of Trustees, et al.*, CV 87-C-2182-S, which established requirements regarding operations of the facilities management division. By its own terms the consent decree was to expire "three years after it is executed by the Court or when all obligations of the Decree are

completed, whichever is later." (See doc. #16, attachment, p. 17). On May 12, 1995, Judge Clemon stated in open court that the consent decree would be terminated:

> Hopefully the parties all recognize the difference between the settlement of a case embodied in a consent decree on the one hand and a case that goes to trial and based on the evidence at trial the judge enters not a consent decree, that is, a judgment to which all the parties agree, but a permanent injunction issued by the judge. We don't have a permanent injunction in this case. ... If this case had gone to trial, and I had issued a permanent injunction against UAB's facilities management division, at any time in the future, any time that UAB would have violated that permanent injunction, you could come back into court. But we don't have a permanent injunction in this case. We have a consent decree in which the parties have agreed basically, assuming good faith, that the case is going to be over in three years. The injunction is going to expire in three years. It is now five years. And I don't think that class members should be misled. There are two higher courts than this judge, and it would be a travesty for me to try to extend some false hope or promise to the class. This consent decree does not give this judge jurisdiction over UAB forever as a permanent injunction would . And should I try to exercise jurisdiction in perpetuity, the Eleventh Circuit would quickly strike it down. And I don't believe in engaging in exercises in futility.
>
> In terms of the provisions of the consent decree, I believe that and I find that the provisions have been substantially complied with, and so the court will enter an order dismissing the consent decree except in certain particulars which will be along the lines as we have suggested during the argument and during the evidence.

(Defendant's exhibit G, pp. 82-84).

The court agreed to hear the grievances that had been filed by May 12, 1995 as well as specifically limited grievances which were to be filed by 4:30 p.m., Wednesday, May 17, 1995. (Defendant's exhibit G, pp. 53, 58, 59, 61, 63-64). Mr. Littlejohn was present during this hearing. (Defendant's exhibit G, pp. 70, 84).

In November 18, 1999, Judge Clemon granted *nunc pro tunc* a motion to terminate consent decree that had been filed December 5, 1994. (See, *Perry Woods, et al. v. Board of Trustees, et al.*, CV87-C-2182-S, doc. # 274).

Littlejohn argues that under the consent decree the job description for the construction coordinator position should not have been revised to include a college degree when the degree has not been shown to be a job requirement. He observes that criteria such as college degree have been shown to have a disproportionate impact on African-Americans. Littlejohn also argues under the consent decree that promotions from within and promotions based on seniority should have governed the filling of job vacancies. He states:

> Had the Consent Decree been followed here, the college degree in construction science requirement would not have been implemented and the plaintiff would have been deemed "qualified" for the position.
>
> In addition, the plaintiff would have bumped Sid Lowman who was hired from the outside as a temporary employee in 1998.
>
> The plaintiff had seniority over Sid Lowman and Alecia Harris in connection with the 1998 vacancies in the position of Construction Coordinator. He had seniority over Susan Zumbado in connection with the vacancy which was filled in the spring of 1999.

Defendant correctly observes that the consent decree was no longer in effect in 1998 and that in any event the consent degree never covered the construction coordinator position. While Littlejohn's

case in support of his racial discrimination claim is based almost exclusively upon alleged violations of the consent decree in *Woods*, that consent decree cannot provide a basis for this lawsuit. On November 18, 1999, the decree was terminated "*nunc pro tunc*." "*Nunc pro tunc*" is defined in Ballentine's Law Dictionary 3d Ed (1969) – "literally, now for then." In other words, Judge Clemon intended for the order of November 18, 1999 to have retroactive effect. Thus, the decree was terminated effective either December 5, 1994 when the motion was filed or at the latest in May of 1995 when Judge Clemon stated that he was satisfied that the obligations of the consent decree had been completed and specifically limited the Court's consideration of grievances under the consent decree to grievances filed by May 17, 1995. Because the consent decree was terminated prior to the job actions complained of in 1998 and 1999, reliance by plaintiff on alleged violations of the consent decree in establishing his *prima facie* case of racial discrimination and retaliation is misplaced.

Littlejohn obliquely attempts to prove his case with circumstantial evidence as well. The burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973) is applicable. Under this framework, Littlejohn has the initial burden of establishing a *prima facie* case of discrimination. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). To establish a *prima facie* case of racial discrimination, a plaintiff must demonstrate by a preponderance of the evidence:

(a) he belongs to a protected class;

(b) he applied for, and was qualified to fill, a position for which defendant was taking applications;

(c) despite his qualification, he was rejected; and

(d) after rejection, the position remained open and defendant continued to seek applicants with similar qualifications.

*McDonnell Douglas*, 411 U.S. at 802.

After Littlejohn proves a *prima facie* case of discrimination, "[t]he burden that shifts to the defendant [] is to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason. The defendant need not persuade the court that it was actually motivated by the proffered reasons." *Burdine*, 450 U.S. at 254. If defendant rebuts the presumption of discrimination, plaintiff then has the opportunity to demonstrate pretext, that is, "that the proffered reason was not the true reason for the employment decision." *Burdine*, 450 at 256.

Defendant argues that Littlejohn cannot show a *prima facie* case of racial discrimination because he cannot demonstrate that he was ever qualified for the construction coordinator positions because he lacked the requisite four year degree. Littlejohn has offered no evidence to the contrary. Further, Littlejohn has not presented statistical evidence which might demonstrate a pattern of discrimination. See, *Earley v. Champion International Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990). Littlejohn has failed to make out a *prima facie* case of racial discrimination. Moreover, even if the court could conclude that Littlejohn has established a *prima facie* case of racial discrimination, the defendant has stated a legitimate, nondiscriminatory reason that other persons were hired rather than Littlejohn. Specifically, defendant states that the persons hired were more qualified than Littlejohn. To show pretext where the issue is relative qualifications, Littlejohn must show that he was so much more qualified that the disparity virtually jumps off the page and slaps one in the face. *Lee v. GTE Fla. Inc.*, 226 F.3d 1249, 1253-54 (11th Cir. 2000); *Walker v. Prudential Property and Casualty*

*Insurance Co.*, 286 F.3d 1270, 1277 (11th Cir. 2002). Littlejohn has not met te burden of proving such evidence. UAB is entitled to summary judgment on the discrimination claim.

Littlejohn also argues that he was subjected to retaliation as a result of his repeated involvement in pursuing claims against UAB in the *Woods* case. To establish a *prima facie* case of retaliation plaintiff must show: (1) that he engaged in statutorily protected activity; (2) that he suffered an adverse employment action; and (3) that there is some causal relationship between the two events. *Gupta v. Florida Bd. of Regents,* 212 F.3d 517 (11th Cir. 2000) To satisfy the causal relationship requirement plaintiff need only show "that the protected activity and the adverse action are not completely unrelated." *Meeks v. Computer Associates Intern.*, 15 F.3d 1013, 1021 (11th Cir. 1994) (*quoting EEOC v. Richhold Chem., Inc.*, 988 F.2d at 1571-72 (11th Cir. 1993). In *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999), the Eleventh Circuit Court of Appeals stated: "We have plainly held that a plaintiff satisfies this [causal relationship] element if he provides sufficient evidence that the decision-maker became aware of the protected conduct, and that there was close temporal proximity between this awareness and the adverse employment action."

Littlejohn states that he filed petitions for the enforcement of the *Woods* consent decree on June 3, 1992; September 30, 1993; September 8, 1997; and September, 17, 1998.[2/] UAB does not argue that Littlejohn did not engage in protected activity when he filed petitions for the enforcement of the *Woods* consent decree. UAB also does not argue that Littlejohn did not suffer an adverse

---

[2/] The docket sheet in *Woods* indicates that Littlejohn filed a motion on July 3, 1992 (doc # 131), a grievance on February 22, 1994 (doc #163) and a grievance on May 17, 1995 (doc. #218). Defendants did not contradict Littlejohn's representation that he filed petitions on September 8, 1997 and September 17, 1998; however, whether he filed those petitions or not, Judge Clemon had indicated that he would not consider a grievance filed after May 17, 1995, and there is nothing on the docket sheet to indicate that he considered any grievances filed after May 17, 1995.

employment action when UAB failed to promote him. Rather, UAB argues only that there is no evidence of a causal relationship between Littlejohn's participation in attempting to enforce the consent decree in *Woods* and UAB's failure to promote him to construction coordinator. While Littlejohn argues that UAB was aware of his efforts in the *Woods* case, he does not state that the decision-maker, David Struck, was aware of Littlejohn's efforts in the *Woods* case nor does he present evidence that Struck was aware of Littlejohn's activities in the *Woods* case. In deposition, Struck testified that he went to work at UAB in November, 1997 and had heard the name of the *Woods* case but was not familiar with any details of the case.

Even assuming Littlejohn had established his *prima facie* case of retaliation, UAB has proffered a legitimate, non-retaliatory reason for the adverse employment action, that is, that Littlejohn was not qualified because he lacked a four year degree. *EEOC v. Reichhold Chemicals, Inc.*, 988 F.2d 1564, 1571-72 (11th Cir. 1993). Littlejohn is thus required to offer evidence from which a jury could conclude that this reason was a "pretextual ruse for retaliation." *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997). Littlejohn has not tendered evidence that UAB's stated reason for not promoting him based on his lack of qualification was pretextual. Littlejohn does not dispute that he did not hold a four year degree nor has he submitted evidence that the change in the job requirements of the position of construction coordinator to include a four year degree was intended to specifically exclude him from consideration based on his earlier participation in *Woods*.

UAB's motion for summary judgment (doc. #11) is due to be granted. A separate Final Judgment will be entered simultaneously herewith.

As to the foregoing it is SO ORDERED this the 4th day of May, 2004.

PAUL W. GREENE
CHIEF MAGISTRATE JUDGE